UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA

**JDI HOLDINGS, LLC,**

    **Plaintiff,**

vs.                                          **CASE NO.: 3:07-cv-00242-MCR/EMT**

**CESSNA AIRCRAFT COMPANY,**
**JET MANAGEMENT INC.,**
**SOUTHERN JET CENTER, LLC,**
**and JOHN KERR, individually.**

    **Defendants.**
_____/

## NOTICE OF REQUEST FOR JUDICIAL NOTICE AND USE AT TRIAL

COMES NOW, the Defendants, SOUTHERN JET CENTER, LLC, and JET MANAGEMENT INC. (hereinafter referred to as "Southern" and "Jet"), and files this notice of request for judicial notice and use at trial, and states:

1. Requests this Court take judicial notice of the following authorities from Federal Aviation Regulations for all purposes including use at trial.

    a. 14 CFR Parts 91, 25, 135 (not attached).

    b. Title 14 CFR Part 25, Section 25.783 (attached).

    c. 14 CFR Part 3 Section 3.5 (attached).

    d. 14 CFR Section 25.785 (attached).

    e. Federal Aviation Regulation section 91.203 (not attached).

{A0356612.DOC }

Dated this 19th day of October, 2009.

/s/ Michael J. Schofield
**MICHAEL J. SCHOFIELD**
Florida Bar No. 373656
CLARK, PARTINGTON, HART,
LARRY, BOND & STACKHOUSE
P.O. Box 13010 (32591-3010)
125 West Romana Street, Suite 800
Pensacola, FL 32502
(850) 434-9200
Attorney for Defendants,
JET MANAGEMENT INC., and
SOUTHERN JET CENTER, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail to Robert C. Palmer, III, Shell, Fleming, Davis & Menge, 226 Palafox Place, Seville Tower, 9th Floor, Pensacola, FL 32502; Adrian N. Roe, Esq., Watkins Dulac & Roe, P.C., Two Gateway Center, 17 East, 603 Stanwix Street, Pittsburgh, PA 15222; and John Kerr, *pro se*, P.O. Box 711, Litchfield, CT 06759 on this 19th day of October, 2009.

/s/ Michael J. Schofield
**MICHAEL J. SCHOFIELD**

{A0356612.DOC }

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations



## e-CFR Data is current as of June 23, 2008

**Title 14: Aeronautics and Space**
PART 25—AIRWORTHINESS STANDARDS: TRANSPORT CATEGORY AIRPLANES
Subpart D—Design and Construction
Personnel and Cargo Accommodations

Browse Previous | Browse Next

### § 25.783   Fuselage doors.

(a) *General.* This section applies to fuselage doors, which includes all doors, hatches, openable windows, access panels, covers, etc., on the exterior of the fuselage that do not require the use of tools to open or close. This also applies to each door or hatch through a pressure bulkhead, including any bulkhead that is specifically designed to function as a secondary bulkhead under the prescribed failure conditions of part 25. These doors must meet the requirements of this section, taking into account both pressurized and unpressurized flight, and must be designed as follows:

(1) Each door must have means to safeguard against opening in flight as a result of mechanical failure, or failure of any single structural element.

(2) Each door that could be a hazard if it unlatches must be designed so that unlatching during pressurized and unpressurized flight from the fully closed, latched, and locked condition is extremely improbable. This must be shown by safety analysis.

(3) Each element of each door operating system must be designed or, where impracticable, distinctively and permanently marked, to minimize the probability of incorrect assembly and adjustment that could result in a malfunction.

(4) All sources of power that could initiate unlocking or unlatching of any door must be automatically isolated from the latching and locking systems prior to flight and it must not be possible to restore power to the door during flight.

(5) Each removable bolt, screw, nut, pin, or other removable fastener must meet the locking requirements of §25.607.

(6) Certain doors, as specified by §25.807(h), must also meet the applicable requirements of §§25.809 through 25.812 for emergency exits.

(b) *Opening by persons.* There must be a means to safeguard each door against opening during flight due to inadvertent action by persons. In addition, design precautions must be taken to minimize the possibility for a person to open a door intentionally during flight. If these precautions include the use of auxiliary devices, those devices and their controlling systems must be designed so that—

(1) No single failure will prevent more than one exit from being opened; and

(2) Failures that would prevent opening of the exit after landing are improbable.

(c) *Pressurization prevention means.* There must be a provision to prevent pressurization of the airplane to an unsafe level if any door subject to pressurization is not fully closed, latched, and locked.

(1) The provision must be designed to function after any single failure, or after any combination of failures not shown to be extremely improbable.

(2) Doors that meet the conditions described in paragraph (h) of this section are not required to have a dedicated pressurization prevention means if, from every possible position of the door, it will remain open to the extent that it prevents pressurization or safely close and latch as pressurization takes place. This must also be shown with any single failure and malfunction, except that—

(i) With failures or malfunctions in the latching mechanism, it need not latch after closing; and

(ii) With jamming as a result of mechanical failure or blocking debris, the door need not close and latch if it can be shown that the pressurization loads on the jammed door or mechanism would not result in an unsafe condition.

(d) *Latching and locking.* The latching and locking mechanisms must be designed as follows:

(1) There must be a provision to latch each door.

(2) The latches and their operating mechanism must be designed so that, under all airplane flight and ground loading conditions, with the door latched, there is no force or torque tending to unlatch the latches. In addition, the latching system must include a means to secure the latches in the latched position. This means must be independent of the locking system.

(3) Each door subject to pressurization, and for which the initial opening movement is not inward, must—

(i) Have an individual lock for each latch;

(ii) Have the lock located as close as practicable to the latch; and

(iii) Be designed so that, during pressurized flight, no single failure in the locking system would prevent the locks from restraining the latches necessary to secure the door.

(4) Each door for which the initial opening movement is inward, and unlatching of the door could result in a hazard, must have a locking means to prevent the latches from becoming disengaged. The locking means must ensure sufficient latching to prevent opening of the door even with a single failure of the latching mechanism.

(5) It must not be possible to position the lock in the locked position if the latch and the latching mechanism are not in the latched position.

(6) It must not be possible to unlatch the latches with the locks in the locked position. Locks must be designed to withstand the limit loads resulting from—

(i) The maximum operator effort when the latches are operated manually;

(ii) The powered latch actuators, if installed; and

(iii) The relative motion between the latch and the structural counterpart.

(7) Each door for which unlatching would not result in a hazard is not required to have a locking mechanism meeting the requirements of paragraphs (d)(3) through (d)(6) of this section.

(e) *Warning, caution, and advisory indications.* Doors must be provided with the following indications:

(1) There must be a positive means to indicate at each door operator's station that all required

operations to close, latch, and lock the door(s) have been completed.

(2) There must be a positive means clearly visible from each operator station for any door that could be a hazard if unlatched to indicate if the door is not fully closed, latched, and locked.

(3) There must be a visual means on the flight deck to signal the pilots if any door is not fully closed, latched, and locked. The means must be designed such that any failure or combination of failures that would result in an erroneous closed, latched, and locked indication is improbable for—

(i) Each door that is subject to pressurization and for which the initial opening movement is not inward; or

(ii) Each door that could be a hazard if unlatched.

(4) There must be an aural warning to the pilots prior to or during the initial portion of takeoff roll if any door is not fully closed, latched, and locked, and its opening would prevent a safe takeoff and return to landing.

(f) *Visual inspection provision.* Each door for which unlatching of the door could be a hazard must have a provision for direct visual inspection to determine, without ambiguity, if the door is fully closed, latched, and locked. The provision must be permanent and discernible under operational lighting conditions, or by means of a flashlight or equivalent light source.

(g) *Certain maintenance doors, removable emergency exits, and access panels.* Some doors not normally opened except for maintenance purposes or emergency evacuation and some access panels need not comply with certain paragraphs of this section as follows:

(1) Access panels that are not subject to cabin pressurization and would not be a hazard if open during flight need not comply with paragraphs (a) through (f) of this section, but must have a means to prevent inadvertent opening during flight.

(2) Inward-opening removable emergency exits that are not normally removed, except for maintenance purposes or emergency evacuation, and flight deck-openable windows need not comply with paragraphs (c) and (f) of this section.

(3) Maintenance doors that meet the conditions of paragraph (h) of this section, and for which a placard is provided limiting use to maintenance access, need not comply with paragraphs (c) and (f) of this section.

(h) *Doors that are not a hazard.* For the purposes of this section, a door is considered not to be a hazard in the unlatched condition during flight, provided it can be shown to meet all of the following conditions:

(1) Doors in pressurized compartments would remain in the fully closed position if not restrained by the latches when subject to a pressure greater than 1/2psi. Opening by persons, either inadvertently or intentionally, need not be considered in making this determination.

(2) The door would remain inside the airplane or remain attached to the airplane if it opens either in pressurized or unpressurized portions of the flight. This determination must include the consideration of inadvertent and intentional opening by persons during either pressurized or unpressurized portions of the flight.

(3) The disengagement of the latches during flight would not allow depressurization of the cabin to an unsafe level. This safety assessment must include the physiological effects on the occupants.

(4) The open door during flight would not create aerodynamic interference that could preclude safe flight and landing.

(5) The airplane would meet the structural design requirements with the door open. This assessment must include the aeroelastic stability requirements of §25.629, as well as the strength requirements of subpart C of this part.

(6) The unlatching or opening of the door must not preclude safe flight and landing as a result of interaction with other systems or structures.

[Doc. No. 2003–14193, 69 FR 24501, May 3, 2004]

Browse Previous | Browse Next

---

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

Electronic Code of Federal Regulations
e-CFR
TM

## e-CFR Data is current as of June 23, 2008

Return to search results

## Title 14: Aeronautics and Space
PART 3—GENERAL REQUIREMENTS

Browse Previous

### § 3.5   Statements about products, parts, appliances and materials.

(a) *Definitions.* The following terms will have the stated meanings when used in this section:

*Airworthy* means the aircraft conforms to its type design and is in a condition for safe operation.

*Product* means an aircraft, aircraft engine, or aircraft propeller.

*Record* means any writing, drawing, map, recording, tape, film, photograph or other documentary material by which information is preserved or conveyed in any format, including, but not limited to, paper, microfilm, identification plates, stamped marks, bar codes or electronic format, and can either be separate from, attached to or inscribed on any product, part, appliance or material.

(b) *Prohibition against fraudulent and intentionally false statements.* When conveying information related to an advertisement or sales transaction, no person may make or cause to be made:

(1) Any fraudulent or intentionally false statement in any record about the airworthiness of a type-certificated product, or the acceptability of any product, part, appliance, or material for installation on a type-certificated product.

(2) Any fraudulent or intentionally false reproduction or alteration of any record about the airworthiness of any type-certificated product, or the acceptability of any product, part, appliance, or material for installation on a type-certificated product.

(c) *Prohibition against intentionally misleading statements.* (1) When conveying information related to an advertisement or sales transaction, no person may make, or cause to be made, a material representation that a type-certificated product is **airworthy**, or that a product, part, appliance, or material is acceptable for installation on a type-certificated product in any record if that representation is likely to mislead a consumer acting reasonably under the circumstances.

(2) When conveying information related to an advertisement or sales transaction, no person may make, or cause to be made, through the omission of material information, a representation that a type-certificated product is **airworthy**, or that a product, part, appliance, or material is acceptable for installation on a type-certificated product in any record if that representation is likely to mislead a consumer acting reasonably under the circumstances.

(d) The provisions of §3.5(b) and §3.5(c) shall not apply if a person can show that the product is

**airworthy** or that the product, part, appliance or material is acceptable for installation on a type-certificated product.

Browse Previous

---

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility



# Electronic Code of Federal Regulations
## e-CFR™

## e-CFR Data is current as of June 23, 2008

**Title 14: Aeronautics and Space**
PART 25—AIRWORTHINESS STANDARDS: TRANSPORT CATEGORY AIRPLANES
Subpart D—Design and Construction
Personnel and Cargo Accommodations

Browse Previous | Browse Next

### § 25.785   Seats, berths, safety belts, and harnesses.

(a) A seat (or berth for a nonambulant person) must be provided for each occupant who has reached his or her second birthday.

(b) Each seat, berth, safety belt, harness, and adjacent part of the airplane at each station designated as occupiable during takeoff and landing must be designed so that a person making proper use of these facilities will not suffer serious injury in an emergency landing as a result of the inertia forces specified in §§25.561 and 25.562.

(c) Each seat or berth must be approved.

(d) Each occupant of a seat that makes more than an 18-degree angle with the vertical plane containing the airplane centerline must be protected from head injury by a safety belt and an energy absorbing rest that will support the arms, shoulders, head, and spine, or by a safety belt and shoulder harness that will prevent the head from contacting any injurious object. Each occupant of any other seat must be protected from head injury by a safety belt and, as appropriate to the type, location, and angle of facing of each seat, by one or more of the following:

(1) A shoulder harness that will prevent the head from contacting any injurious object.

(2) The elimination of any injurious object within striking radius of the head.

(3) An energy absorbing rest that will support the arms, shoulders, head, and spine.

(e) Each berth must be designed so that the forward part has a padded end board, canvas diaphragm, or equivalent means, that can withstand the static load reaction of the occupant when subjected to the forward inertia force specified in §25.561. Berths must be free from corners and protuberances likely to cause injury to a person occupying the berth during emergency conditions.

(f) Each seat or berth, and its supporting structure, and each safety belt or harness and its anchorage must be designed for an occupant weight of 170 pounds, considering the maximum load factors, inertia forces, and reactions among the occupant, seat, safety belt, and harness for each relevant flight and ground load condition (including the emergency landing conditions prescribed in §25.561). In addition—

(1) The structural analysis and testing of the seats, berths, and their supporting structures may be determined by assuming that the critical load in the forward, sideward, downward, upward, and rearward directions (as determined from the prescribed flight, ground, and emergency landing conditions) acts separately or using selected combinations of loads if the required strength in each specified direction is

substantiated. The forward load factor need not be applied to safety belts for berths.

(2) Each pilot seat must be designed for the reactions resulting from the application of the pilot forces prescribed in §25.395.

(3) The inertia forces specified in §25.561 must be multiplied by a factor of 1.33 (instead of the fitting factor prescribed in §25.625) in determining the strength of the attachment of each seat to the structure and each belt or harness to the seat or structure.

(g) Each seat at a flight deck station must have a restraint system consisting of a combined safety belt and shoulder harness with a single-point release that permits the flight deck occupant, when seated with the restraint system fastened, to perform all of the occupant's necessary flight deck functions. There must be a means to secure each combined restraint system when not in use to prevent interference with the operation of the airplane and with rapid egress in an emergency.

(h) Each seat located in the passenger compartment and designated for use during takeoff and landing by a flight attendant required by the operating rules of this chapter must be:

(1) Near a required floor level emergency exit, except that another location is acceptable if the emergency egress of passengers would be enhanced with that location. A flight attendant seat must be located adjacent to each Type A or B emergency exit. Other flight attendant seats must be evenly distributed among the required floor- level emergency exits to the extent feasible.

(2) To the extent possible, without compromising proximity to a required floor level emergency exit, located to provide a direct view of the cabin area for which the flight attendant is responsible.

(3) Positioned so that the seat will not interfere with the use of a passageway or exit when the seat is not in use.

(4) Located to minimize the probability that occupants would suffer injury by being struck by items dislodged from service areas, stowage compartments, or service equipment.

(5) Either forward or rearward facing with an energy absorbing rest that is designed to support the arms, shoulders, head, and spine.

(6) Equipped with a restraint system consisting of a combined safety belt and shoulder harness unit with a single point release. There must be means to secure each restraint system when not in use to prevent interference with rapid egress in an emergency.

(i) Each safety belt must be equipped with a metal to metal latching device.

(j) If the seat backs do not provide a firm handhold, there must be a handgrip or rail along each aisle to enable persons to steady themselves while using the aisles in moderately rough air.

(k) Each projecting object that would injure persons seated or moving about the airplane in normal flight must be padded.

(l) Each forward observer's seat required by the operating rules must be shown to be suitable for use in conducting the necessary enroute inspection.

[Amdt. 25–72, 55 FR 29780, July 20, 1990, as amended by Amdt. 25–88, 61 FR 57956, Nov. 8, 1996]

Browse Previous | Browse Next

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility